# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:22-CV-00104-FDW

| | |
|---|---|
| BRIAN BURTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |
| ) | |

THIS MATTER is before the Court on Claimant Brian A. Burton's ("**Claimant**") Motion for Summary Judgment, (Doc. No. 13), filed on August 29, 2022; Defendant Acting Commissioner of Social Security's (the "**Commissioner**") Motion for Summary Judgment and Memorandum in Support (Docs. Nos. 16, 17), filed on November 28, 2022; Claimant's Reply to the Commissioner's Motion for Summary Judgment, (Doc. No. 18), filed on November 29, 2022; and Claimant's Notice of Supplemental Authority, (Doc. No. 19), filed on March 10, 2023. Claimant, through counsel, seeks judicial review of an unfavorable decision denying his application for a period of disability and Disability Insurance Benefits ("**DIB**") under title II of the Social Security Act (the "**Act**").

The motions are fully briefed and are now ripe for review. Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth herein, Claimant's Motion for Summary Judgment, (Doc. No. 13), is **GRANTED**; the Commissioner's Motion for Summary Judgment, (Doc. No. 16), is **DENIED**; and the Commissioner's decision is **REMANDED**.

1

## I. BACKGROUND

On October 18, 2019, Claimant filed a Title II application for a period of disability and DIB, alleging disability beginning on March 21, 2018. (Tr. 10). After his application was denied both initially and upon reconsideration, Claimant requested a hearing by an Administrative Law Judge ("**ALJ**"). (Id.). On July 8, 2021, the ALJ held a telephone hearing, and on August 16, 2021, he issued an unfavorable decision, finding Claimant was not disabled under the Act. (Tr. 1–21).

During the five-step sequential evaluation process for determining whether an individual is disabled under the Act, at step one, the ALJ found that Claimant did not engage in substantial gainful activity between his alleged onset date of March 21, 2018, and September 30, 2018, the date Claimant was last insured. (Tr. 13). Next, at step two, the ALJ found Claimant had the following severe impairments: "Obesity, Degenerative disk disease, Right knee status post meniscal tear, Status post lateral tibial plateau fracture, Poly-substance abuse disorder, Anxiety disorder, and Post Traumatic Stress Disorder (PTSD)." (Id.). Under step three, the ALJ determined none of claimant's impairments, nor any combination of impairments, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.). In discussing Claimant's medical impairments, the ALJ determined Claimant had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Tr. 14–15). The ALJ further explained that Claimants RFC assessment "reflects the degree of limitation" he found with regard to Claimant's mental function analysis. (Tr. 15).

Before moving on to step four, the ALJ found Claimant:

[H]ad the residual functional capacity [("**RFC**")] to perform light work as defined in 20 CFR 404.1567(b) except he can lift and/or carry 20 pounds occasionally and

2

ten pounds frequently; sit six hours in an eight hour workday, stand and/or walk six hours in an eight hour workday; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; operation of foot controls is limited to occasional with the bilateral lower extremities; background noise is limited to moderate (which is like a business office, department store, grocery store, or light traffic); able to concentrate in the workplace for two (2) hours before requiring a break; limited to perform simple, routine tasks; occasionally interact with supervisors and co-workers; occasionally interact with the general public; and he can frequently respond appropriately to changes in a routine work setting.

(Tr. 15). The ALJ then determined at step four that Claimant was unable to perform any past relevant work. Assessing step five, the ALJ asked the vocational expert ("**VE**") whether jobs existed in the national economy for an individual with Claimant's age, education, work experience, and RFC. (Tr. 21). The VE testified that, given those factors, an individual would have been able to perform the requirements of representative occupations such as: marker, router, and tabber. (Tr. 21; see also Tr. 73–74). Therefore, the ALJ concluded Claimant was not disabled, as defined by the Act, at any time during the alleged period of disability. (Tr. 21).

Claimant's subsequent request for review by the Appeals Council was denied, and as a result, the ALJ's decision became the final decision of the Commissioner. (Tr. 1–6). Claimant has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richard v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court

3

Case 3:22-cv-00104-FDW   Document 20   Filed 03/30/23   Page 3 of 17

does not review a final decision of the Commissioner *de novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). We do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the

4

national economy.  Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).  The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five.  See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.2d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'"  Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)).  In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotation marks omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1566, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."

Monroe, 826 F.3d 176, 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429).

If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

On appeal, Claimant identifies two assignments of error: (A) the ALJ failed to afford substantial weight to the Department of Veteran Affairs (the "**VA**") disability rating; and (B) the RFC assessment was legally flawed. For the reasons outlined below, the Court finds Claimant's first assignment of error without merit. However, the Court agrees with Claimant's second contention and holds that remand is warranted based on the ALJ's RFC assessment.

#### A. The Weight of the VA Disability Determination

Claimant's first assignment of error alleges the ALJ failed to either afford substantial weight to the VA's disability determination or provide specific reasons for not doing so. Claimant contends the ALJ's decision is thus legally flawed in violation of Fourth Circuit precedent such that remand is necessary. Conversely, the Commissioner argues the ALJ appropriately followed new Social Security Administration ("**SSA**") rules, which do not require any discussion of the

6

disability determination of another administrative agency. Thus, the issue before this Court is whether, as Claimant alleges, Fourth Circuit precedent remains controlling as to SSA claims, or whether, as the Commissioner argues, the new SSA rules abrogate that precedent as to claims filed after March 27, 2017, when the new rules went into effect.

The Fourth Circuit recently addressed this very issue in Rogers v. Kijakazi, No. 22-1264, 2023 WL 2564349, – F.4th – (4th Cir. 2023), and held "the new rules supersede [Fourth Circuit] precedents and thus apply to claims filed on or after March 27, 2017." Id. at *6.[1] The new SSA rules provide that because other governmental agencies' decisions are "inherently neither valuable nor persuasive as to the issue of whether you are disabled or blind under the [Social Security] Act," the SSA "will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c). Accordingly, the Fourth Circuit held its "precedents do not trump the new SSA rules," and as such, the ALJ did not commit error by following those rules and declining to give the VA's disability determination substantial weight.

Here, as in Rogers, Claimant alleges the ALJ erred by failing to even mention the VA's disability rating, much less give it substantial weight. However, in light of the Fourth Circuit's holding in Rogers, and for the reasons cited therein, Claimant's argument is without merit. The ALJ appropriately adhered to the new SSA rules, and he did not commit error by declining to either explicitly discuss or give substantial weight to the VA's disability determination.

---

[1] The Fourth Circuit assessed three cases holding ALJs must consider and afford substantial weight to another agency's disability determination, or they must provide "persuasive, specific, valid reasons" for not doing so. See DeLoatche v. Heckler, 715 F.2d 148, 150 & n.1 (4th Cir. 1983); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 343 (4th Cir. 2012); Woods v. Berryhill, 888 F.3d 686, 692 (4th Cir. 2018).

7

B.  **The RFC Assessment**

Claimant's second assignment of error asserts the ALJ's RFC assessment was legally flawed for two reasons: (1) the ALJ relied on an incorrect regulatory framework when analyzing Claimant's RFC, and (2) the ALJ failed to adequately account for Claimant's moderate limitations in maintaining concentration, persistence, or pace, in his RFC assessment.  In response, the Commissioner argues the ALJ's RFC assessment applied the correct legal standards and is supported by substantial evidence.  The Court will address each of Claimant's arguments in turn.

1. *Regulatory Framework*

The RFC is an assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  Id.  Thus, a claimant's RFC represents "the most [he] can still do despite" any physical and mental limitations that affect the claimant's ability to work.  20 C.F.R. § 416.945(a)(1).  In assessing the RFC, the ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'"  Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019) (quoting Monroe v. Colvin, 826 F.3d 176, 188 (4th Cir. 2016)); see also 20 C.F.R. § 416.945(a)(2).  To that end, the ALJ must base the RFC assessment "on *all* of the relevant evidence in the case record.  SSR 96-8p, at *5; 20 C.F.R. § 416.945(3).

SSR 96-8p further establishes the RFC "assessment must first identify the individual's functional limitations and assess his or her work-related abilities on a function-by-function basis,

8

including the functions" listed in the regulations.[2] SSR 96-8p, at *1. "Only after this a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Dowling v. Comm'r of SSA, 986 F.3d 377, 387 (4th Cir. 2021). Finally, the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 98-6p, at *7. To satisfy this narrative discussion requirement, the ALJ must explain whether, and how, certain pieces of evidence support his conclusions, as well as "which evidence the ALJ found credible and why." Monroe, 826 F.3d at 189.

The Fourth Circuit has underscored that the RFC assessment must be based on the correct regulatory framework, which is outlined by 20 C.F.R. § 416.945 and SSR 96-8p. Dowling, 986 F.3d at 387. This framework establishes the RFC assessment must be "rooted in a function-by-function analysis of how [the claimant's] impairments impact [his] ability to work." Dowling, 986 F.3d at 387. In sum, the ALJ must "[s]how [his] work." Patterson v. Comm'r of SSA, 846 F.3d 656, 663 (4th Cir. 2017). And where the reviewing court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." Mascio, 780 F.3d at 637.

In this case, the ALJ applied an improper framework such that his RFC assessment "fell short of these requirements." Dowling, 986 F.3d at 387. As in Dowling, the ALJ here cited neither

---

[2] These include: (1) the claimant's physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)"; (2) the claimant's mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting"; and (3) other work-related abilities affected by impairments, "such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 404.1545(b)–(d); see also 20 C.F.R. § 416.945.

20 C.F.R. § 416.945, nor SSR 96-8p, which outline the proper framework for assessing a claimant's RFC. See id. Instead, it appears his RFC assessment was based entirely on 20 C.F.R. §§ 404.1529, 404.1520c, and SSR 16-3, which establish the framework for evaluating a claimant's symptoms, including pain, and any medical opinions in the record. (Tr. 16). Here, "[t]he ALJ's reliance on an incorrect regulatory framework led to an erroneous RFC assessment that" requires remand for three reasons. Id. at 388.

      a.    *Function-by-Function Analysis*

First, the ALJ improperly expressed Claimant's RFC "without first engaging in a 'function-by-function analysis.'" Id. (quoting Monroe, 826 F.3d at 179)); see also Thomas, 916 F.3d at 312. This is apparent for both Claimant's physical impairments and his mental impairments. The ALJ found at step three that Claimant had severe physical impairments, including obesity, degenerative disk disease, right knee status post meniscal tear, and status post lateral tibial plateau fracture. (Tr. 13). However, after listing the relevant evidence, the ALJ merely concludes the "pain and other symptoms associated with the claimant's severe impairments limit him to work at the light exertional level and affect his ability to perform postural tasks and interact with workplace hazards." (Tr. 17). Despite noting Claimant's testimony and evidence concerning his "long history of knee and back pain," (Tr. 16–17), "the ALJ drew no explicit conclusions about how [Claimant's] [physical] limitations affect [his] ability to perform job-related tasks for a full workday." Thomas, 916 F.3d at 312. Importantly, the ALJ's RFC analysis is silent as the specific functional limitations and restrictions Claimant's physical impairments cause, and it is devoid of any discussion concerning their impact on the specific functions outlined in 20 C.F.R. § 416.945(b). (Tr. 16–20). Instead, the RFC merely concludes Claimant

10

can lift and/or carry 20 pounds occasionally and ten pounds frequently; sit . . . , stand and/or walk six hours in an eight hour workday; occasionally climb ramps and stairs [but] never ladders, ropes or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; [and] operation of foot controls is limited to occasional.

(Tr. 15). Such a conclusion, without first conducting a function-by-function analysis, "frustrates meaningful review" such that remand is necessary. See Monroe, 826 F.3d at 188.

The ALJ also found at step three that Claimant had severe mental impairments, including poly-substance abuse disorder, anxiety, and PTSD. (Tr. 13). As above, however, the ALJ's RFC assessment notes Claimant's testimony and medical evidence related to his mental impairments without ever going through a function-by-function analysis considering the impact Claimant's functional limitations as listed in 20 C.F.R. § 416.945(c). (Tr. 16–20). Instead, the RFC simply concludes "background noise is limited to moderate," and that Claimant is "able to concentrate in the workplace for two (2) hours before requiring a break; limited to perform simple, routine tasks; occasionally interact with supervisors and co-workers; occasionally interact with the general public; and he can frequently respond appropriately to changes in a routine work setting." (Tr. 15). However, as with Claimant's physical impairments, the ALJ only discussed functional limitations in passing "when rattling off a laundry list" of all Claimant's impairments, and such "grouping" of Claimant's limitations without making any specific conclusions as to work-related functional limitations "is a far cry from the 'function-by-function' analysis the ALJ [is] required to conduct." Dowling, 986 F.3d at 388.

    b.    *Symptom Evaluation*

Second, as Claimant points out, the ALJ correctly identified the two-step process for

11

evaluating symptoms such as pain, but then neglected to address the second step of that analysis.[3] (Tr. 16–18). At the first step, the ALJ referenced Claimant's testimony and his Function Report to provide a recitation of Claimant's symptoms and the activities he alleges he is, or is not, able to undertake. (Tr. 16). The ALJ then stated: "After careful consideration of the evidence, . . . claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 16). Thus, having found that the first step in the symptom evaluation was satisfied, the ALJ was then required to evaluate the intensity and persistence of those symptoms to determine the resulting impact on Claimant's ability to work.

However, in doing so, the ALJ merely concludes, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision." (Tr. 17). The ALJ then listed evidence from Claimant's medical records, discussed conflicts between Claimant's testimony regarding his symptoms and the record overall, and evaluated the medical opinions. (Tr. 18–20). Significantly, nowhere in the discussion of Claimant's RFC does the ALJ specifically discuss the intensity, persistence, and limiting effects of Claimant's symptoms, nor does he elaborate on the impact those symptoms have on his work-related abilities. Instead, the ALJ's opinion lumps together his analysis of Claimant's symptoms and his assessment of Claimant's impairments overall. The Fourth Circuit has made clear that this is insufficient: "an RFC assessment is *a separate and distinct inquiry* from a symptom evaluation, and [an] ALJ err[s] by treating them as one and the same." Dowling, 986 F.3d at 387 (emphasis added). Further, the SSA has emphasized that each step within the symptom

---

[3] 20 C.F.R. § 404.1529 provides the framework for this analysis: (1) ALJs must consider whether there is a "medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms"; and if so, (2) ALJs "must then evaluate the intensity and persistence of [the claimant's] symptoms [to] determine how [a claimant's] symptoms limit [his] capacity to work." 20 C.F.R. § 404.1529(b)–(c).

Case 3:22-cv-00104-FDW Document 20 Filed 03/30/23 Page 12 of 17

evaluation constitutes a separate inquiry, such that "a finding that [a claimant's] impairments could reasonably be expected to produce [his] pain or other symptoms *does not* involve a determination as to the intensity, persistence, or functionally limiting effects" of those symptoms. 20 C.F.R. § 404.1529(c) (emphasis added).

Thus, not only did the ALJ err by combining his analyses of Claimant's symptoms and impairments, but he also erred by merging the two steps of the symptom evaluation within the specific context of the RFC assessment.[4] Because the ALJ's opinion is silent as to his determinations on the intensity, persistence, and limiting effects that Claimant's symptoms—including those resulting from Claimant's knee and back pain, as well as those stemming from Claimant's PTSD and anxiety—have on his capacity for work, the Court is "left to guess about how the ALJ arrived at his conclusions." See Mascio, 780 F.3d at 637. Thus, remand is necessary.

   c.  *Narrative Discussion*

Finally, the ALJ's assessment of Claimant's RFC "contains too little logical explanation for us to conduct meaningful . . . review." Thomas, 916 F.3d at 312. SSR 96-8p provides that an RFC assessment "must include a narrative discussion describing how evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence," and further, that the ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p, at *7. "Thus, a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion. The second component . . . is just as important as the other two. Indeed, our precedent makes clear that

---

[4] 20 C.F.R. § 404.1529(d)(4) underscores the relevance of the impact of a claimant's symptoms during the RFC assessment: "If you have a medically determinable severe physical or mental impairment(s), but your impairment(s) does not meet or equal an impairment listed in appendix 1 of this subpart, we will consider the impact of your impairment(s) and any related symptoms, including pain, on your residual functional capacity."

13

meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." Thomas, 916 F.3d at 311. The Fourth Circuit has accordingly held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," which must include the "specific application of the pertinent legal requirements to the record evidence." Monroe, 826 F.3d at 189.

Here, the ALJ "rattl[ed] off a laundry list" of evidence regarding Claimant's physical and mental impairments, and then he scattered conclusory statements concerning Claimant's limitations throughout his RFC assessment. Unfortunately, the ALJ rarely provided any logical explanation, or any analysis at all, of how Claimant's specific impairments impacted the RFC, which impairments and symptoms supported which limitations, or how the impairments effected Claimant's ability to work for an eight-hour workday, five days a week.

For example, in his discussion of Claimant's physical abilities, the ALJ provides an in-depth summary of Claimant's knee and back impairments, and then—without any discussion—concludes Claimant was limited to work at the light exertional level. (Tr. 17). Similarly, the ALJ lists Claimant's mental impairment evidence, but then—again, without any analysis—concludes Claimant's mental impairments "prevent him from performing complex, fast-paced work activities, and affect his abilities to work in loud environments, tolerate workplace changes and interact with others." (Tr. 17). This conclusion, however, conflicts with his RFC conclusion, which limits background noise to moderate and establishes Claimant is able to "occasionally interact with supervisors[,]co-workers[, and] the general public; and he can frequently respond appropriately to changes in a routine work setting." (Tr. 15). Yet, the ALJ never explains how this key inconsistency between his conclusions can be reconciled, nor does he explain how he

arrived at either conclusion. Accordingly, the ALJ's "opinion is sorely lacking in the analysis needed for" this Court to meaningfully review his conclusions.

The Commissioner argues remand is unnecessary because the ALJ's RFC assessment satisfied the requirements of SSR 96-8p and captures all of Claimant's credibly established limitations, and that "[d]ecisional perfection, of course, is not the rule." (Doc. No. 17, p. 13). However, the issues discussed above preclude the Court from determining whether, as the Commissioner contends, substantial evidence supports the ALJ's decision.

In Mascio, the Fourth Circuit declined to adopt "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," stating instead that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curium)) (cleaned up). That is the case here, because not only was the ALJ's opinion silent—and the Commissioner does not argue otherwise—as to any function-by-function analysis, but it also lacked the proper evaluation for considering Claimant's symptoms. More importantly, the ALJ's opinion was almost completely devoid of any logical, narrative explanation, and instead jumped from a recitation of the evidence to conclusory statements concerning Claimant's limitations. Thus, the ALJ applied the incorrect legal standards for Claimant's RFC assessment, and doing so resulted in significant holes that prevent this Court from conducting meaningful review of the ALJ's decision. Accordingly, remand is necessary.

Therefore, because of the absence of a function-by-function analysis, the improper evaluation of Claimant's symptoms, and the lack of a sufficient narrative discussion explaining

15

how the evidence supports the ALJ's conclusions, this Court hereby **REMANDS** this action so that the ALJ can more clearly explain his findings, reasoning, and conclusions regarding Claimant's RFC in line with the framework established by 20 C.F.R. § 416.945 and SSR 96-8p.

2. *Moderate Limitations in Maintaining Concentration, Persistence, or Pace*

Claimant also argues the RFC assessment was legally flawed because the ALJ failed to adequately account for his limitations in maintaining concentration, persistence, or pace, in his RFC assessment. However, because the Court has already determined the ALJ's opinion contains too little explanation to allow meaningful review, the Court declines to resolve that question. See Thomas, 916 F.3d at 312 n.5 (holding that "[w]ithout further explanation, we simply cannot tell whether the RFC finding . . . properly accounts for [the claimant's] moderate limitations in concentration, persistence, and pace."). On remand, the ALJ will need to take into consideration Claimant's remaining allegation of error and sufficiently address how the RFC reflects Claimant's moderate limitation in concentration, persistence, and pace.

### IV. CONCLUSION

The Court explicitly notes that in ordering remand pursuant to sentence four of 42 U.S.C. § 405 (g), the Court does not take a position on the merits of Claimant's application for disability benefits. The Court finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand. See, e.g., Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[.]" (citations omitted)). The Court notes that remand provides the opportunity for the ALJ to modify any prior basis for the prior decision in the new decision issued upon remand. "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of

litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." Shalala v. Schaefer, 509 U.S. 292, 299 (1993) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 624–25 (1990)).

**IT IS THEREFORE ORDERED** that for the foregoing reasons, Claimant's Motion for Summary Judgment, (Doc. No. 13), is **GRANTED**; the Commissioner's Motion for Summary Judgment, (Doc. No. 16), is **DENIED**; and the ALJ's determination is **REMANDED** to the Commissioner for further proceedings consistent with this **ORDER**.

**IT IS SO ORDERED.**

Signed: March 30, 2023

Frank D. Whitney
United States District Judge